Filed 1/8/24  P. v. Hernandez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>RICARDO HERNANDEZ,<br><br>　　Defendant and Appellant. | B327701<br><br>(Los Angeles County<br>Super. Ct. No. BA285268-02) |

　　APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

　　Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Ricardo Hernandez, who with his codefendant Manuel Aguirre was convicted of murder in 2006, appeals from the superior court's order following an evidentiary hearing denying his petition for resentencing under Penal Code section 1172.6.[1] Hernandez argues substantial evidence did not support the court's ruling he could still be convicted of murder as an aider and abettor who acted with implied malice. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *A Jury Convicts Hernandez of First Degree Murder, and We Affirm*

On March 12, 2005 Efren Gutierrez went to a park to play basketball. Members of the Avenues Gang frequented the park and wrote gang graffiti there. Gutierrez was not a gang member, but he had three tattoos on his hand and arms. He was wearing a cap with the initials of a Los Angeles baseball team that certain gang members frequently wear.

Jose Arrieta was an employee of the park and was working that day. At noon Arrieta spoke with Hernandez near the gym. Arrieta had known Hernandez for 10 years. Hernandez was wearing a blue baseball cap and was accompanied by a thin, 12- to 16-year-old young man, who was approximately five feet three inches tall and had a dark complexion. Both had bicycles: Hernandez had a road sport bicycle; the young man had a small motorized bicycle with high handlebars.

---

[1] Statutory references are to the Penal Code.

Arrieta and Hernandez talked about their tattoos. Hernandez warned Arrieta to "watch out" for people who might misinterpret his tattoos. Hernandez told Arrieta, "We're just looking to cap fools that are all tatted down."[2] Hernandez added, "Nah, I'm just messing around."

Shortly before 3:00 p.m., Richard Enriquez, the park's facility director, was in his office in the gym when a man in his 20's or early 30's entered. The man, who said his name was Richie Boy, told Enriquez that he was looking for the park's previous director. Richie Boy also told Enriquez not to worry about the bald guys outside because Richie Boy had them "under control." Enriquez testified Hernandez looked like the man who said he was Richie Boy.

Luis Sanchez worked at the park that day as a basketball referee and scorekeeper. After finishing work, Sanchez began walking home, but returned to the park when he realized he had left his shoes there. As he reached the entrance to the parking lot, he saw two men next to a car. A darker-skinned, husky man was standing next to the driver's side talking to the driver, who later was identified as Gutierrez. A lighter-skinned, skinny man opened the passenger door, went into the car, and started hitting Gutierrez. The lighter-skinned man jumped out of the car and moved to the driver's side of the car. The car quickly backed out of its parking space and then moved forward. Sanchez heard one shot as the car drove in reverse and a second shot a few seconds later as the car moved forward. At the time of the second shot, the lighter-skinned man was standing two feet from the darker-

---

[2]     To "cap" means to shoot. (*People v. Williams* (2015) 61 Cal.4th 1244, 1250.)

3

skinned man.  After the second shot, Gutierrez slumped to the side.  The car moved forward until it hit a wall and came to a stop.  The wheels continued turning, and the tires burned, covering the park with smoke.  The two men ran out of the park and down the street.  The shooter left behind a bicycle.  One of the men removed his shirt.  Sanchez had seen the shooter and the man who hit Gutierrez go into the office in the gym together before the shooting.  Enriquez saw the smoke three to five minutes after the man who identified himself as Richie Boy left Enriquez's office.

After the shooting Sanchez went in the gym and told Enriquez someone had been shot.  Sanchez went home because he did not want to be interrogated.  Two hours later a car approached Sanchez as he walked near his home.  Someone in the car told Sanchez "not to say nothing."

Gutierrez died from a single gunshot wound to the back of his head.  A fingerprint found on the bicycle matched that of Hernandez.

Sanchez later identified Hernandez from a six-pack photographic lineup as the man who punched Gutierrez.  Sanchez also identified Aguirre as someone who looked "familiar." Sanchez told detectives Aguirre may have been the shooter or the man who hit Gutierrez.  At the preliminary hearing, however, Sanchez recanted.  He testified he had identified Hernandez because he felt pressured by police.  At trial Sanchez testified Hernandez was not the man he saw at the park.  Enriquez testified Sanchez said he was reluctant to testify because he had been threatened and he was afraid for his and his family's safety.  During a weekend recess in Sanchez's trial testimony, the police

detained Sanchez for writing "Big Lou" on the sidewalk at the park.

Carlos F., who was 12 years old, also witnessed the shooting. Carlos was with his 15-year-old sister, Ivonne F., and other children on the street outside the park when he heard someone say "Cypress Avenues 43." Carlos turned and saw a man holding a gun next to the driver's side of a car. Another man was also standing near the car. Two to three seconds later, Carlos heard two gunshots. After the gunshots, Carlos saw the two men ran away. The shooter left his bicycle in the grass, and the other man rode away on his bicycle.

Ivonne did not see the shooting, but she heard two gunshots. When she heard the gunshots she hid in some bushes. After she stepped out of the bushes, a man came running toward her and bumped into her. Ivonne saw another man riding his bike toward her.

After Ivonne and Carlos got home, Ivonne told Carlos and her mother that she thought the man who bumped into her was "Manuel," a cousin of her friend Palmira.[3] Ivonne had met Manuel several years earlier when Palmira took Ivonne to his home. Ivonne also told detectives she thought the man who bumped into her was Palmira's cousin Manuel, but she later told detectives she was 90 percent sure the man was a classmate's brother. Carlos identified several men in photographic lineups, but he did not identify Aguirre or Hernandez.

The People charged Hernandez with one count of first degree murder (§ 187, subd. (a)). The People alleged a principal personally and intentionally discharged a firearm

---

[3] As stated, Aguirre's first name is Manuel.

proximately causing great bodily injury or death, within the meaning of section 12022.53, subdivisions (d) and (e). The People also alleged Hernandez committed the murder for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1)(C).

The trial court instructed the jury, among other things, on direct aiding and abetting. The court also instructed the jurors they could find Hernandez guilty of murder under the natural and probable consequences doctrine if they found Hernandez intended to aid and abet Aguirre in committing assault with a firearm or brandishing a firearm.

The jury found Hernandez guilty of first degree murder and found true the firearm and gang allegations. The trial court sentenced Hernandez to a prison term of 25 years to life for the murder conviction, plus 25 years to life for the firearm enhancement. We affirmed the judgment. (*People v. Hernandez* (Aug. 28, 2008, B199067) [nonpub. opn.] (*Hernandez I*).)

B. *The Trial Court Reduces Hernandez's Conviction to Second Degree Murder*

In 2017 Hernandez filed a petition for writ of habeas corpus in the superior court seeking relief under the Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155, which held an aider and abettor may not be convicted of first degree murder under the natural and probable consequences doctrine. The People elected not to retry Hernandez, and the trial court reduced Hernandez's first degree murder conviction to second degree

murder. The court resentenced him to a prison term of 15 years to life, plus 25 years to life for the firearm enhancement.

Hernandez appealed. We reversed the judgment and directed the trial court to hold a new sentencing hearing to exercise its discretion whether to strike the firearm enhancement under newly amended section 12022.53, subdivision (h), and to recalculate Hernandez's custody credit. (*People v. Hernandez* (July 31, 2018, B286469) [nonpub. opn.].)

C.    *The Superior Court Twice Denies Hernandez's Petition for Resentencing Under Section 1172.6*

In 2019 Hernandez filed a petition for resentencing under former section 1170.95, now section 1172.6. Hernandez alleged that the People proceeded against him under a theory of felony murder or murder under the natural and probable consequences doctrine, that he was convicted of first or second degree murder under one of those theories, and that he could not now be convicted of first or second degree murder because of legislative changes to sections 188 and 189. The superior court appointed counsel to represent Hernandez and, after briefing, issued an order to show cause. The court held an evidentiary hearing and denied the petition.

We reversed the order denying the petition and directed the trial court to determine whether the prosecutor proved Hernandez was ineligible for resentencing under section 1172.6 applying the correct, beyond-a-reasonable-doubt standard. (*People v. Hernandez* (Mar. 9, 2021, B303608) [nonpub. opn.].) The Supreme Court granted the People's petition for review and transferred the case to us with directions to vacate our decision and reconsider the matter in light of recent amendments to

section 1172.6. We again reversed the order denying the petition and directed the trial court, as we had before, to determine whether the prosecutor proved beyond a reasonable doubt Hernandez was ineligible for resentencing. (*People v. Hernandez* (Feb. 14, 2022, B303608) [nonpub. opn.].)

On remand, the superior court held an evidentiary hearing. The court stated it had reviewed the clerk's transcript and the reporter's transcript from the trial, and the court admitted into evidence an electronic copy of those records. The court ruled Hernandez was "ineligible for relief under 1172.6 now, because the People have proved each and every element of this crime beyond a reasonable doubt. The evidence is pretty clear, to me, that he's a direct aider and abettor." The court denied Hernandez's petition, and Hernandez timely appealed.

## DISCUSSION

A. *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 986 (*Reyes*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957). Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and

requires proof of malice to convict a principal of murder, except under the revised felony-murder rule. (*Gentile*, at pp. 842-843.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts, if he or she could not now be convicted of murder because of the changes the Legislature made effective 2019 to the definitions of the crime. (See *People v. Strong, supra,* 13 Cal.5th at p. 708; *People v. Lewis, supra,* 11 Cal.5th at p. 957; *Gentile, supra,* 10 Cal.5th at p. 843.) If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner, if requested. (*Lewis*, at pp. 962-963; see § 1172.6, subd. (b)(1)(A), (3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1172.6, subd. (c).)

Where, as here, the petitioner has made the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid*.; see *Gentile, supra,* 10 Cal.5th at pp. 853-854.)

9

On appeal from an order denying a petition under section 1172.6, we review the superior court's factual findings for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125; *People v. Richardson* (2022) 79 Cal.App.5th 1085, 1090.) "In reviewing the trial court's findings for substantial evidence, we . . . examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the necessary fact] beyond a reasonable doubt. . . . While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Pittman* (2023) 96 Cal.App.5th 400, 414, internal quotation marks omitted; see *Guiffreda*, at p. 125; *People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "'"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence."'" (*People v. Navarro* (2021) 12 Cal.5th 285, 339; see *People v. Brooks* (2017) 3 Cal.5th 1, 57; *People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)

      B.     *Substantial Evidence Supported the Superior Court's Finding Beyond a Reasonable Doubt Hernandez Is Ineligible for Relief Under Section 1172.6*

      1.    *Applicable Law*

"A person who aids and abets the commission of a crime is culpable as a principal in that crime." (*Gentile, supra*, 10 Cal.5th at p. 843; see *People v. Powell* (2021) 63 Cal.App.5th 689, 712.)

"'[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another [e.g., murder] if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.""' (*People v. Curiel* (2023) 15 Cal.5th 433, 463.) Thus, a direct aider and abettor's guilt is "'based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.'" (*Powell*, at p. 710; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) "'[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus— a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953-954; see *Curiel*, at p. 467.) "'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054; see *People v. Burgos* (2022) 77 Cal.App.5th 550, 560, review granted July 13, 2023, S274743.)

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Malice "may be express or implied." (§ 188, subd. (a).) "It is express when there is a manifest intent to kill." (*Gentile*, *supra*, 10 Cal.5th at p. 844; see § 189, subd. (a)(1).) "Murder is committed with implied malice when 'the killing is proximately caused by "'an act, the natural

11

consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.""" (*Reyes*, *supra*, 14 Cal.5th at p. 988; see *People v. Pittman*, *supra*, 96 Cal.App.5th at p. 414.) "In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143; accord, *People v. Cravens* (2012) 53 Cal.4th 500, 507; *People v. Palomar* (2020) 44 Cal.App.5th 969, 974.)

Aiding and abetting implied malice murder remains a valid theory of liability for second degree murder, even after the Legislature eliminated natural and probable consequences liability for murder. (*Reyes*, *supra*, 14 Cal.5th at p. 990; *Gentile*, *supra*, 10 Cal.5th at p. 850; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 588.) "'[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'" (*Reyes*, at p. 991; see *People v. Curiel*, *supra*, 15 Cal.5th at p. 463; *People v. Pittman*, *supra*, 96 Cal.App.5th at p. 415.) An "'aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.'" (*Reyes*, at p. 990; see *Gentile*, at p. 850.)

B.   *Substantial Evidence Supported the Superior Court's Finding Hernandez Directly Aided and Abetted Murder*

Hernandez contends substantial evidence did not support the superior court's finding he aided and abetted the murder. First, Hernandez argues that, because no witness identified him at the preliminary hearing or at trial, the prosecutor did not prove Hernandez was "the defendant who committed the crime." Second, Hernandez argues that, even if he did participate in the attack on Gutierrez, he did not aid and abet murder. Neither contention carries the day.

On the first argument, the "mere filing of a [section 1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. . . . 'The purpose of [section 1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.'" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936 ["'a routine claim of instructional error'" that "'could have been asserted on appeal from the judgment of conviction'" will not support relief under section 1172.6]; *People v. Burns* (2023) 95 Cal.App.5th 862, 865 ["[s]ection 1172.6 does not create a right to a second appeal," and a petitioner "cannot use it to resurrect a claim that should have been raised in his . . . direct appeal"].) In convicting Hernandez of murder, the jury found Hernandez was one of the perpetrators of the crime. In his direct appeal Hernandez challenged the sufficiency of the evidence

13

supporting the jury's verdict, including the finding he and Aguirre were present at the scene of the crime, and we concluded substantial evidence supported the verdict. We stated "the evidence places defendants at the scene of the crime, gives them a motive for committing the crime, and identifies them as the perpetrators of the crime. There is evidence from which the jury reasonably could infer that the witnesses recanted their identification testimony or claimed an inability to identify defendants due to fear or intimidation. There thus is a hypothesis under which the jury could have found the evidence consistent with guilt, and substantial evidence supports the identification of defendants as the perpetrators of the crime." (*Hernandez I, supra*, B199067.) The legislative changes to sections 188 and 189 do not affect whether substantial evidence supported the jury's finding Hernandez was one of the perpetrators. Hernandez may not relitigate the issue in a petition under section 1172.6. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 549 [a section 1172.6 petition "is not a means by which a defendant can relitigate issues already decided"]; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].)

In any event, substantial evidence supported the superior court's finding Hernandez was one of the perpetrators. The evidence was uncontradicted Hernandez was at the park before the shooting. Arrieta spoke with Hernandez at 12:00 p.m., and Sanchez saw Hernandez and Aguirre in the gym before the shooting. Sanchez identified Hernandez from a six-pack photographic lineup as the man who hit Gutierrez. Although at trial Sanchez recanted his identification of Hernandez, the

14

superior court could reasonably infer Sanchez's statement to police was more credible than his in-court testimony in the presence of Hernandez, Aguirre, and their families because Sanchez feared retaliation by the Avenues gang. Sanchez was threatened after the shooting, and he later told Enriquez he was reluctant to testify because he feared for his family's safety. As the superior court judge (who was also the trial judge in the case) stated, "I saw these witnesses, they were very reluctant, very scared when they came into this court, and it obviously affected their testimony." (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233 [""it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends""].)[4]

On the second argument, Hernandez contends that, even if he did hit Gutierrez, he did not aid and abet murder with implied malice. Hernandez contends there was no evidence he knew Aguirre had a gun or intended to shoot Gutierrez. Hernandez further contends that he did not intend to aid Aguirre in the shooting and that his act of punching Gutierrez did not cause his death or "make him susceptible to being shot."

Substantial evidence supported the superior court's finding Hernandez aided and abetted the murder with implied malice.

---

[4]     Although Sanchez's identification of Hernandez was not the only evidence connecting him to the crime, a repudiated out-of-court identification can be enough to support a conviction. (*People v. Cuevas* (1995) 12 Cal.4th 252, 271-272; see *People v. Gaines* (2023) 93 Cal.App.5th 91, 138 [repudiated extrajudicial statements were "sufficient without corroboration to form the basis of [the defendant's] conviction if the evidence against him otherwise meets the substantial evidence test"].)

15

First, there was substantial evidence Hernandez had the requisite mens rea—that Hernandez knew Aguirre intended to shoot Gutierrez, intended to aid him in shooting Gutierrez, and acted with conscious disregard for human life. (See *Reyes*, *supra*, 14 Cal.5th at p. 991.) There was evidence that the Avenues gang controlled the park and that someone said "Cypress Avenues 43" after Aguirre shot Gutierrez. Hernandez told Enriquez not to worry about the guys outside because he had them "under control." Before Aguirre shot Gutierrez (who had tattoos on his hand and arms), Hernandez told Arrieta that he and his companion were looking to shoot people with certain tattoos, which the court reasonably interpreted to mean Hernandez "was aware that someone in that crowd had a gun and was going to use it." The court could reasonably infer that Aguirre and Hernandez were members of the Avenues gang, that the Avenues gang claimed the park as its territory, that Aguirre and Hernandez were looking for members of other gangs to shoot, and that Aguirre shot Gutierrez because he looked like a (rival) gang member. (See *People v. Chhoun* (2021) 11 Cal.5th 1, 32 ["While not itself an element of the crimes, motive can illuminate intent."].)

Substantial evidence also supported the superior court's finding Hernandez assisted in achieving the crime (actus reus). Hernandez went into Gutierrez's car, hit him, and got out of the car before Aguirre shot Gutierrez. Hernandez asserts his attack on Gutierrez in the car "did not contribute to or cause Gutierrez's death," but an aider and abettor of murder does not have to cause a death; he or she must "aid the commission of the life-endangering *act*" (*Reyes*, *supra*, 14 Cal.5th at p. 991), which the superior court reasonably concluded Hernandez did. As the court

16

stated, Hernandez "soften[ed] the guy with a punch, at the same time distracting him from the shooter."

Hernandez argues that Aguirre's act of shooting Gutierrez was "a completely separate criminal act" from Hernandez's act of punching Gutierrez and that, "on the issue of the shooting," Hernandez was "merely present." But the evidence showed, as the court described it, "a coordinated effort": After Hernandez hit Gutierrez, Hernandez got out of the car on the passenger side, moved to the driver's side, and stood next to Aguirre while Aguirre shot Gutierrez. The court reasonably inferred Hernandez got "out of the car and out of the line of fire so he doesn't get shot." (See *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [defendants' "concerted action reasonably implie[d] a common purpose"].) That Hernandez and Aguirre were at the park together before the shooting and fled together after the shooting was additional evidence Hernandez intended to assist Aguirre in shooting Gutierrez. (See *People v. Burgos*, *supra*, 77 Cal.App.5th at p. 560 [substantial evidence supported the defendant's conviction for aiding and abetting a robbery where the defendant "was a 'continuous constituent' of the group that committed the robbery—before, during, and after the offense"], review granted; *People v. Abelino* (2021) 62 Cal.App.5th 563, 578 [presence at the scene of the crime and failure to take steps to prevent a crime may be "considered together with other evidence in determining that a person is an aider and abettor"]; *People v. Lara* (2017) 9 Cal.App.5th 296, 322 ["'conduct before and after the offense,' including 'flight,'" is a factor determining whether a defendant aided and abetted a crime].)

## DISPOSITION

The superior court's order denying Hernandez's petition under section 1172.6 is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.